AO 91 (Rev. 08/09) Criminal Complaint

AUSA ADAM McMICHAEL

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY _____ D.C.

JUN 21 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 19-MJ-8240-BER |
| Rosendo HERNANDEZ-MEDINA | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 15, 2019__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 3144 | Material Witnesses |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

S/A David Weeks, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __06/21/2019__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__    Hon. Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, David Weeks, first being duly sworn, do hereby depose and state as follows:

1.  I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Miami, Florida Field Division, West Palm Beach District Office, and have been so employed since February of 2010. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have received training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, transportation and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2.  Prior to my assignment with the DEA, I was a police officer for the City of West Palm Beach Police Department (WPBPD), and had been so employed since April of 1997. During my last nine years with the WPBPD, I was assigned to the Special Investigations Division, and from there assigned to a money laundering task force and to the DEA task force. During that time, I was tasked with the responsibility of investigating money laundering and narcotics related crimes. As a law enforcement officer, I have been involved in over 100 narcotics-related arrests and participated in the execution of over 50 narcotics-related search warrants.

3.  This affidavit is submitted in support of a material witness warrant, pursuant to Title 18, United States Code, Section 3144, for alien **Rosendo HERNANDEZ-MEDINA, alien number: A\*\*\*-\*\*\*-272**, who is a Mexican national, presently in the custody of the Department

of Homeland Security, Customs and Border Protection at the Broward Transitional Center, 3900 N. Powerline Road, Pompano, Florida 33073.

4. I believe that the testimony of the above witness is material to the criminal prosecution of Alexander ERIZA, (hereinafter "ERIZA") for violating Title 21, United States Code, Sections 841(a)(1) and (b)(1)(viii), that is Possession with Intent to Distribute Crystal Methamphetamine, a Schedule I controlled, in *United States v. Alexander ERIZA*, Case No: 19-8233-DLB.

5. I have personally participated in the investigation of the offenses referred to in this affidavit. This affidavit is based upon my personal knowledge and information supplied by fellow law enforcement officers. This affidavit is intended to establish only that there is sufficient probable cause to secure the above witness' testimony. As a result, I have not set forth every fact known to me regarding this investigation.

6. On or about June 3, 2019, agents from the DEA received information from a Confidential Source (hereinafter referred to as CS) concerning an individual in Mexico who could either broker or otherwise supply the CS with kilogram quantities of crystal methamphetamine. For ease of reference, the individual in Mexico will be referred to herein as the "Mexican Broker." At the direction of agents, the CS began communicating with the Mexican Broker for the purpose of arranging a delivery of crystal methamphetamine to West Palm Beach, Florida. During the course of these communications, the CS informed the Mexican Broker that he (the CS) had a customer in West Palm Beach who wanted to purchase five kilograms of crystal methamphetamine. The Mexican Broker informed the CS that he (the Mexican Broker) would attempt to locate a supplier who could furnish the five kilograms of crystal methamphetamine.

7. On or about June 12, 2019, the Mexican Broker contacted the CS and informed the CS that there would be crystal methamphetamine arriving in Florida on Friday, June 14, 2019.

8. On or about June 14, 2019, at 11:13 a.m., the Mexican Broker called and informed the CS that the transporter of the crystal methamphetamine was on his way and that the transporter was three hours away. At approximately 12:31 p.m., the CS called the Mexican Broker. During that call, the Mexican Broker asked the CS for a specific location where the transporter could meet the CS to conduct the transfer of the drugs. The CS provided the address of the Home Depot shopping center located at 6800 Okeechobee Boulevard, West Palm Beach, Florida.

9. At approximately 1:50 p.m., the Mexican Broker provided the CS with a telephone number for the transporters telephone number – (832) 618-8005. The Mexican Broker also instructed the CS to contact the telephone number on behalf of "PATO" in order to make final arrangement to meet.

10. At approximately 2:05 p.m., the CS placed a recorded telephone call to telephone number (832) 618-8005 which was answered by a Hispanic male later identified as Alexander ERIZA. During the telephone call between ERIZA and the CS, ERIZA informed the CS that "they" were two hours away and that "they" were in a silver Honda car. ERIZA asked the CS if everything was "complete" and added that he (ERIZA) was "ordered to count." Based upon my training, experience and this investigation, I believe that when ERIZA asked the CS if everything was "complete," he was inquiring whether the CS had full payment for the five kilograms of crystal methamphetamine. I also believe that when ERIZA informed the CS that he was "ordered to count," he was referring to a command by the Mexican Broker to ensure that the CS had paid the full and correct amount of money for the drugs. It should be noted that the CS acknowledged ERIZA's inquiry and affirmed that he had the money.

11. At approximately 3:59 p.m., agents observed a silver Honda Accord occupied by two Hispanic males, bearing a Texas license plate, exit the Florida turnpike onto Okeechobee Boulevard, West Palm Beach, Florida. Surveillance units followed the Honda until it arrived at a Marathon gas station located at 6917 Okeechobee Boulevard, West Palm Beach, Florida. This particular gas station was directly north, across the street from the Home Depot where the drug deal was set to occur. The gas station is also next to a Walgreens store which is immediately east of the gas station which is also north and across the street from the Home Depot.

12. At approximately 4:00 p.m., the CS received a recorded telephone call from telephone number (832) 618-8005, wherein ERIZA informed the CS that "they" had arrived and were getting gas at a gas station next to Walgreens. Agents observed ERIZA, the passenger, and his driver companion, who was later identified as **Rosendo HERNANDEZ-MEDINA** (hereinafter "HERNANDEZ-MEDINA"), exit the Honda Accord and walk towards the Marathon gas station convenience store. Shortly thereafter, agents approached the Honda Accord and made contact with both subjects.

13. Both subjects were detained without incident and separated. It should be noted that ERIZA was found in possession of the cellular telephone, with telephone number (832) 618-8005, for which he was in communication with the CS.

14. Subsequent to detaining both males, a Palm Beach County Sheriff's Office narcotics trained K-9 was utilized to conduct a free air sniff around the exterior of the Honda Accord. During that sniff, the K-9 gave a positive alert to the presence of narcotics on the passenger side of the vehicle. Thereafter, a search of the Honda Accord was conducted.

15. During the search, ERIZA was detained in an unmarked police vehicle in proximity of the Honda Accord. He was being supervised by an agent who was not interviewing him. At that

time, and before agents completed the search, ERIZA stated to the agent supervising him, in broken Spanish / English that he had "informacion about the "drogas from Mexico" but that he needed "protection." Thereafter, agents located a medium sized black backpack in the trunk of the Honda Accord. Upon opening the backpack, agents found it to contain several items of clothing, as well as five (5) one gallon size, Ziploc style bags that contained a crystalized substance, believed to be crystal methamphetamine. A sample of the crystalized substance later field tested positive for the presence of crystal methamphetamine. The five Ziploc style bags containing the crystal methamphetamine were also weighed and had a total approximate weight of 5,135.8 grams.

16. Following the seizure of the crystal methamphetamine, agents transported ERIZA and HERNANDEZ-MEDINA to the Palm Beach County Sheriff's Office. Once there, agents conducted separate post *Miranda* interviews of both subjects which were audio and video recorded.

17. After being read his *Miranda* rights, ERIZA stated that he understood his rights and agreed to answer questions. During questioning, ERIZA advised that approximately one week ago, he received a call from a male in Mexico known to him as "PATO." During this call, PATO asked ERIZA to transport and deliver a bag of clothes from Houston, Texas to Arcadia, Florida. PATO explained the clothes were to be delivered to his (PATO) brother who had been recently released from jail. ERIZA said PATO agreed to pay him (ERIZA) $1,000 to deliver the bag of clothing and ERIZA agreed. ERIZA said approximately two to three days after this initial call, he (ERIZA) received a second call from PATO, who advised ERIZA that the bag of clothes would be delivered to his (ERIZA) house soon and that ERIZA would then deliver the bag to his (PATO) brother in Florida. ERIZA said on June 13, 2019, at approximately 8:00 p.m., a black bag was delivered to

his residence in Houston. ERIZA said that approximately one hour later, he and Hernandez-Medina left from Houston to deliver the bag to Florida.

18. ERIZA said that during the drive from Houston to Florida, he spoke with PATO, who told him the bag was to be delivered to West Palm Beach, Florida, instead of Arcadia, Florida. ERIZA agreed. ERIZA said during the drive to Florida, he also spoke by telephone with the male, who he believed was PATO's brother in West Palm Beach, who in fact, was the CS. ERIZA said the male directed him (ERIZA) to meet with at the Home Depot located at 6800 Okeechobee Boulevard, West Palm Beach, Florida. ERIZA said when he and HERNANDEZ-MEDINA arrived to the area of the Home Depot, they stopped at a gas station to get gas and that was when they were met by police.

19. When questioned as to the contents of the bag ERIZA had brought with him from Texas to Florida, ERIZA said he was instructed by PATO not to open the bag or to look inside. ERIZA said that he did not look inside the bag and claimed he did not know what the bag contained.

20. After being read his *Miranda* rights, HERNANDEZ-MEDINA stated he understood his rights and agreed to answer questions. During questioning, HERNANDEZ-MEDINA advised he and ERIZA (known to him as "Jose") traveled to Florida from Houston, Texas, for a construction job in Marathon, Florida. HERNANDEZ-MEDINA advised that he had personal belongings in a bag located in the back seat as well as tools and a cooler in the trunk. Agents showed HERNANDEZ-MEDINA a photo of the black bag located by agents in the trunk of the vehicle, which contained the crystal methamphetamine. HERNANDEZ-MEDINA advised that the black bag did not belong to him and said that he observed ERIZA place the bag into the

trunk of the vehicle in Houston, just prior to their departure for Florida. HERNANDEZ-MEDINA also said that he did not look inside the bag and therefore was unaware of its contents.

21. Presently, HERNANDEZ-MEDINA is in immigration custody and detained by the Department of Homeland Security, Customs and Border Protection pending removal and deportation from the United States. Based upon HERNANDEZ-MEDINA's legal status, I believe that his removal and deportation from the United States will occur on or about June 27, 2019, and prior to the resolution of *United States v. Alexander ERIZA*, Case No: 19-8233-DLB.

22. WHEREFORE, your affiant seeks the issuance of a material witness warrant for Rosendo HERNANDEZ-MEDINA, identified herein, in *United States v. Alexander ERIZA*, Case No: 19-8233-DLB, and to ensure that the witness is available to the defense.

FURTHER AFFIANT
SAYETH NAUGHT.

_____
David Weeks
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this _21_ day of June, 2019

_____
HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   19-MJ-8240-BER

UNITED STATES OF AMERICA

vs.

ROSENDO HERNANDEZ-MEDINA,

**Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY:   _____
ADAM C. McMICHAEL
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0772321
TEL (561) 820-8711